**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ISABELLA KAVANAGH** | : |
| **408 Ben Oaks Drive W** | |
| **Severna Park, MD 21146** | : |
| | |
| **Plaintiff,** | : |
| | |
| **v.** | :   **Case No.** |
| | |
| **DONALD J. TRUMP** | : |
| **President of the United States of America** | |
| **1600 Pennsylvania Avenue, NW** | : |
| **Washington, DC 20500** | |
| | : |
| **and** | |
| | : |
| **WILLIAM P. BARR** | : |
| **Attorney General of the United States** | |
| **950 Pennsylvania Avenue, NW** | : |
| **Washington, DC 20530** | |
| | : |
| **and** | |
| | : |
| **MARK ESPER** | : |
| **Secretary of Defense of the United States** | |
| **1000 Defense Pentagon** | : |
| **Washington, DC 20301** | |
| | : |
| **and** | |
| | : |
| **GREGORY T. MONAHAN** | : |
| **Acting Chief of the United States Park Police** | : |
| **1100 Ohio Drive, SW** | |
| **Washington, DC 20242** | : |
| | |
| **and** | : |

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

**JAMES M. MURRAY**                           :
**Director, U.S. Secret Service**
**950 H Street, NW, Suite 7800**              :
**Washington, DC 20223**
                                              :

   **and**                     :

**MAJOR GENERAL WILLIAM J. WALKE**
**Commanding General of the District of**     :
  **Columbia National Guard**
**2001 E. Capitol Street, SE**                :
**Washington, DC 20003**
                                              :

   **and**                     :

**GENERAL JAMES C. MCCONVILLE**
**Chief of Staff of the United States Army**  :
**200 Army Pentagon**
**Washington, DC 20310**                      :

   **and**                     :

**JOHN DOES 1-100**                           :

   **and**                     :

**JOHN POES 1-100**                           :

    **Defendants.**        :


## COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES
### (Violation of First Amendment Rights, Fourth Amendment Rights)

Plaintiff, Isabella Kavanagh, by and through undersigned counsel, respectfully

demands judgment against Defendants on the grounds and in the amount set forth below:

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

**JURISDICTION AND VENUE**

1.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, because this action presents federal questions and seeks to redress the deprivation of rights under the First and Fourth Amendments to the United States Constitution.

2.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(e)(1), because the events giving rise to these claims occurred in the District of Columbia.

**INTRODUCTION**

3.      On June 1, 2020, the world watched as the United States of America's federal government launched a concerted and violent attack to clear from Lafayette Square demonstrators who were peacefully protesting racial injustice, police brutality, and the recent murders by police of George Floyd and Breonna Taylor.  Their sole reason for doing so?  To allow President Trump to cross the street and pose with a Bible for a five-minute photo opportunity at St. John's Church.

4.      Prior to June 1, President Trump had repeatedly encouraged state and local government actors to use "overwhelming force" to quash protesters and achieve "total domination."  On June 1, at the direction of President Trump, Attorney General Barr ordered that Lafayette Square be promptly cleared of all peaceful demonstrators. Without any warning or request that the protesters leave Lafayette Square, law enforcement agents, including those from the U.S. Park Police, U.S. Secret Service, D.C. National Guard, U.S. Army, and the Arlington County Police Department, donned riot gear and descended on the peaceful protesters with chemical grenades, tear gas, pepper

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

balls, and rubber bullets, all while holding over their heads the threat of arrest.  The peaceful scene in Lafayette Square erupted into chaos, as demonstrators struggled to escape.  Many, including Plaintiff, suffered serious injuries in the process.

5.      Defendants' unwarned use of chemical grenades, tear gas, and rubber bullets to clear the peaceful demonstrators from Lafayette Square amounted to an unreasonable use of force that violated Plaintiff's First and Fourth Amendment constitutional rights.

## PARTIES

6.      Plaintiff, Isabella Kavanagh, is an adult resident of the State of Maryland. On June 1, 2020, she participated in the peaceful protest in Lafayette Square against racial injustice, police brutality, and the murders of George Floyd and Breonna Taylor.

7.      Defendant Donald J. Trump is the President of the United States.  He is sued in his official capacity for the damages alleged herein.

8.      Defendant William Barr is the Attorney General of the United States.  He is sued in his individual and official capacities, as he personally issued the order that caused the damages alleged herein.

9.      Defendant Mark Esper is the U.S. Secretary of Defense.  He is sued in his official capacity, through which he is responsible for the actions of the U.S. armed forces, including U.S. military police officers, who caused the damages alleged herein.

10.     Defendant Gregory T. Monahan is the Acting Chief of the United States Park Police.  He is sued in his official capacity, through which he is responsible for the actions of the U.S. Park Police officers who caused the damages alleged herein.

11.     Defendant James M. Murray is the Director of the U.S. Secret Service.  He is sued in his official capacity, through which he is responsible for the actions of Secret Service agents who caused the damages alleged herein.

12.     Defendant Major General William J. Walker, is the Commanding General of the District of Columbia National Guard. He is sued in his official capacity, through which he is responsible for the actions of the D.C. National Guard troops who caused the damages alleged herein.

13.     Defendant General James C. McConville is the Chief of Staff of the United States Army.  He is sued in his official capacity, through which he is responsible for the actions of the U.S. Army troops, including U.S. Military Police officers, who caused the damages alleged herein.

14.     Defendants John Does 1-100 are federal law enforcement officers of the U.S. Park Police, agents of the U.S. Secret Service, members of the U.S. Armed Forces, officers of other federal law enforcement agencies, and other federal government officials who authorized, planned, and/or participated in the attack on peaceful protesters in and near Lafayette Square on June 1, 2020.  They are sued in their individual capacities for causing the damages alleged herein.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

15.    Defendants John Poes 1-100 are officers of state and local law enforcement agencies, including without limitation the Arlington County Police Department, who participated in the attack on peaceful protesters in and near Lafayette Square on June 1, 2020.  They are sued in their individual capacities for causing the damages alleged herein.

### FACTS

### Death of George Floyd

16.    On May 25, 2020, at approximately 8:00 p.m., George Floyd, a 46-year-old black man, was arrested by the Minneapolis Police Department for allegedly passing a counterfeit $20 bill at a grocery store.  In the course of his arrest, Mr. Floyd was handcuffed and fell to the pavement outside the grocery store.  Despite the fact that Mr. Floyd was handcuffed and lying on his stomach, Officer Derek Chauvin further restrained Mr. Floyd by pressing his knee and leaning his body weight into Mr. Floyd's neck.  Mr. Floyd desperately plead for relief, repeatedly stating "please," "I can't breathe," and calling "Mama."  Officer Chauvin ignored Mr. Floyd's pleas, and kept his knee pressed into his neck, even after no pulse was detected, for a total of eight minutes and forty-six seconds.  Responding paramedics found Mr. Floyd unresponsive and pulseless.  He was pronounced dead at 9:25 p.m. at Hennepin County Medical Center.

17.    Mr. Floyd's brutal death represents just one instance of the systemic racism and resulting discrimination perpetrated by law enforcement officers against black people—discrimination which is further exemplified by the murder of Breonna

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Taylor on March 13, 2020 by Louisville, Kentucky police officers who entered her home in the middle of the night and shot her eight times.

### **Peaceful Demonstrations in Lafayette Square: May 29, 2020 - May 31, 2020**

18.    Lafayette Square is a seven-acre public park in Washington, D.C., located on H Street between 15th and 17th Streets, directly across from the White House.[1]  It is the closest public park to the White House.



*Image captured from Google Maps, June 11, 2020*

19.    As a traditional public forum, throughout its history, Lafayette Square has been frequently used by activists exercising their First Amendment Rights.[2]

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[1]    National Park Service, *Lafayette Square Historic District*, https://www.nps.gov/nr/travel/wash/dc30.htm    (accessed June 10, 2020).

20.    From May 29, 2020 through May 31, 2020, peaceful demonstrators gathered daily in Lafayette Square to protest racial injustice, police brutality, and the murders of Mr. Floyd and Ms. Taylor.  Some knelt in silence; others chanted and held signs emblazoned with "Black Lives Matter" and Mr. Floyd's final words of "I Can't Breathe."

**Defendants Encourage Use of Force against Peaceful Protesters**

21.    Following the beginning of protests on May 29, President Trump began making a series of social media posts encouraging the use of force against demonstrators:

a.    On May 29, 2020, at 7:53 a.m., President Trump tweeted[3]: ". . . These THUGS are dishonoring the memory of George Floyd, and I won't let that happen. Just spoke to Governor Tim Walz and told him that the Military is with him all the way. Any difficulty and we will assume control but, **when the looting starts, the shooting starts.** Thank you!"

(The phrase "when the looting starts, the shooting starts" was first used by Miami Police Chief Walter Headley in 1967.[4]  Headley had a known history of discriminating against the Black community, and he used the phrase in advocating for the use of police force against black people.)

b.    On May 30, 2020, at 8:41 a.m., President Trump tweeted[5]: "Great job last night at the White House by the U.S. @SecretService . . . They let the

---

[2]    *Id.*

[3]    Tweeted from the President's personal account, @realDonaldTrump (bolded emphasis added). This tweet was removed for violating the Twitter Rules about glorifying violence.

[4]    Barbara Sprunt, *The History Behind 'When the Looting Starts, The Shooting Starts'*, NPR, May 29, 2020, https://www.npr.org/2020/05/29/864818368/the-history-behind-when-the-looting-starts-the-shooting-starts

[5]    Tweeted from the President's official office account, @POTUS (bolded emphasis added).

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

'protesters' scream & rant as much as they wanted, but **whenever someone got too frisky or out of line, they would quickly come down on them, hard – didn't know what hit them** . . . Big crowd, professionally organized, but no one came close to breaching the fence. **If they had they would have been greeted with the most vicious dogs, and most ominous weapons, I have ever seen. That's when people would have been really badly hurt, at least. Many Secret Service agents just waiting for action.** 'We put the young ones on the front line, sir, they love it, and good practice.' . . ."

c. On May 30, 2020, at 9:34 a.m., President Trump criticized the protesters in Lafayette Square and encouraged his supporters to engage in a counter-demonstration, tweeting[6]: "The professionally managed so-called 'protesters' at the White House had little to do with the memory of George Floyd. They were just there to cause trouble. The @SecretService handled them easily. Tonight, I understand, is MAGA NIGHT AT THE WHITE HOUSE???"

d. On May 30, 2020, President Trump retweeted[7] a tweet from Buck Sexton that read: "This isn't going to stop until the good guys are willing to use **overwhelming force** against the bad guys."

e. On May 31, 2020, at 4:15 p.m., President Trump tweeted[8]: "Get tough Democrat Mayors and Governors. These people are ANARCHISTS. Call in our National Guard NOW. . . ."

f. On May 31, 2020, at 6:08 p.m., President Trump tweeted[9]: "Our National Guard stopped them [protesters in Minneapolis] cold last night. Should have been called up sooner!"

22. On June 1, President Trump led a conference call with the nation's governors. During the course of that call, President Trump stated[10]:

---

[6] Tweeted from the President's personal account, @realDonaldTrump.

[7] Retweeted from the President's personal account, @realDonaldTrump (bolded emphasis added).

[8] Tweeted from the President's personal account, @realDonaldTrump.

[9] Tweeted from the President's personal account, @realDonaldTrump.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

a.  "The attorney general is here, Bill Bar, and we will activate Bill Barr and activate him very strongly. We're strongly – the secretary of defense is here. We're strongly looking for arrests. **You have to get much tougher.** You're gonna get over it."

b.  "**If you don't dominate, you're wasting your time**. They're [protesters] going to run all over you, you'll look like a bunch of jerks."

c.  "You have every one of these guys [protesters] on tape, why aren't you prosecuting them? **Now the harder you are, the tougher you are, the less likely it is that you're going to be hit.**"

d.  "But we found out many things, it's like a movement, and it's a movement that **if you don't put it down, it'll get worse and worse**, this is like Occupy Wall Street. It was a disaster until one day, somebody said, that's enough and they just went in and wiped them out and that's the last time we ever heard the name Occupy Wall Street . . . ."

e.  "But it's [protests] happened before, it's happened numerous times. And the only time it's successful is when you're weak. And most of you are weak."

f.  "But Washington was under great control. But we're going to have it under much more control. We're pouring in – we're going to pull in thousands of people (inaudible) of the DC police, the mayor, the mayor of Washington DC and Secret Service did a very good job around the White House but their sole, their primary function is around the White House. **But and we're going to clamp down very, very strong. And you better arrest (inaudible) – and you'll never see this stuff again and you'll have to let them know that.**"

g.  "**So I say that and the word is dominate.** If you don't dominate your city and state, they're gonna walk away with you. **And we're doing it in Washington, in DC, we're going to do something that people haven't seen before. But we're going to have total domination. And then you have to put them in jail and you have to authorize whatever it is, whoever it is you authorize . . . .**"

---

[10]   CNN, *READ: President Trump's Call with US Governors Over Protests*, June 1, 2020, https://www.cnn.com/2020/06/01/politics/wh-governors-call-protests/index.html (bolded emphases added).

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

h. "**Total domination**, you have to dominate."

i. "If you're weak and don't dominate the streets they're gonna stay away from you until you finally do it, and you don't want that."

j. "They go out wearing dark black uniforms. **They go out and they were there in the houses and they walked right down the street, knocking them out with tear gas, tear gas.** Those guys, they were running. And the next night it was much less and then the next night, it's like you know what happened, they went to other cities. They're all looking for weak spots."

k. "And you know when they have bricks you know they come armed with bricks and they have bricks and rocks big rocks and they have other things and they throw them, **you know you're allowed to fight back. You don't have to have a brick hit you in the face and you don't do anything about it, you are allowed to fight back. Now I'm not asking my attorney general to have to stop me from saying that, but I would say that if a brick is thrown at somebody and it hits him, or maybe if it misses him, your very tough, strong, powerful people are allowed to fight back against that guy and very strongly and powerfully. That's what I think**."

l. "Use our National Guard, you're much better off with too many than too few. That's one thing we have to have, too many is a good thing, too few is unacceptable so go out there and get 'em, good luck tonight . . . ."

23.     During the course of the same call with the nation's governors on June 1, Attorney General Barr stated[11]:

a. "**Law enforcement response is not gonna work unless we dominate the streets, as the President said. We have to control the streets.** If we treat these as demonstrations, the police are pinned back, guarding places and don't have the dynamic ability to go out and arrest the troublemakers. They're just standing in a line watching the events. Then when they disperse the crowds, the crowds go off running in different directions, create havoc, there is looting and everything. **We have to control the crowd and not react to what's happening, And that requires a strong presence.** In many places it will require the National Guard and when

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[11]   *Id.* (bolded emphases added).

there's a strong presence, (inaudible) to defend buildings or a strong presence to control the crowd, things are quieting down, as in Minneapolis.

b. ". . . **but the key is you have to have adequate force**. That brings up law enforcement, even federal law enforcement, working with your state and local law enforcement, to be more dynamic to go after the troublemakers."

c. "The reason you know we have to control the streets is not just to bring peace to that town, but to give us the opportunity to get the bad actors because they are going to go elsewhere, we're picking up information . . . So that's why it's imperative we can't play whack-a-mole we have to . . . professional instigators to the leadership group. And the way to do that is with a strong statement."

24.     During the course of the same call with the nation's governors on June 1, Secretary of Defense Esper stated[12]: "And so, in my urging I agree, **we need to dominate the battle space** . . . resources in the guards. I stand ready, the chairman stands ready, the head of the National Guard stands ready to fully support you in terms of helping mobilize the guard and do what they need to do . . . **I think the sooner that you mask and dominate the battle space, the quicker this dissipates**, and we get back to a – the right normal."

### The June 1, 2020 Attack on Plaintiff and Other Peaceful Demonstrators in Lafayette Square

25.     On June 1, 2020, peaceful demonstrators gathered in Lafayette Square to protest police brutality and the deaths of George Floyd and Breonna Taylor.

26.     That afternoon, District of Columbia Mayor Muriel Bowser announced that a curfew would be in effect from 7:00 p.m. on June 1 through 6:00 a.m. on June 2.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[12]   *Id.* (bolded emphases added).

27.     At approximately 5:00 p.m., Plaintiff arrived at Lafayette Square and joined the peaceful demonstrators.  Plaintiff had been at Lafayette Square the prior day (May 31) to participate in the peaceful protests.

28.     At 6:04 p.m., following the mayor's announcement, the White House notified reporters that President Trump would be delivering a briefing at 6:15 p.m. from the Rose Garden.

29.     At 6:08 p.m., Attorney General Bar arrived to Lafayette Square to meet with law enforcement, including the National Guard, U.S. Secret Service, U.S. Park Police, U.S. Army, and the Arlington County Police.

30.     At 6:10 p.m., Attorney General Barr, while standing behind law enforcement, pointed to St. John's Church. At approximately the same time, White House Deputy Chief of Staff Tony Ornato contacted the Secret Service to inform them of President Trump's intention to make an appearance at St. John's Church.  The Secret Service subsequently requested the assistance of other law enforcement agencies to clear the area in and around Lafayette Square and St. John's Church.

31.     Following Attorney General Barr's order and the request from the U.S. Secret Service for additional law enforcement assistance, additional law enforcement officers appeared at Lafayette Square and began to don gas masks and riot gear.

32.     The demonstrators, including Plaintiff, continued protesting peacefully. At no time did Plaintiff engage in or witness any violent, aggressive, or threatening behavior on behalf of the demonstrators.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

33.     At approximately 6:30 p.m., 30 minutes **before** the District-wide curfew went into effect, law enforcement officers from the National Guard, U.S. Secret Service, U.S. Park Police, U.S. Army, and Arlington County Police forcibly rushed the peaceful demonstrators, using tear gas, chemical grenades, pepper balls, and/or rubber bullets to clear the crowd from in and around Lafayette Square and St. John's Church.

34.     Plaintiff did not hear any warnings or requests from law enforcement to clear the area in and around Lafayette Square and St. John's Church at any time prior to law enforcement's forceful advancement on the demonstrators with chemical grenades, tear gas, pepper balls, and rubber bullets.

35.     Plaintiff was pushed back as law enforcement advanced.   A law enforcement officer, who was donned in riot gear, made eye contact with her and stated, "I don't want to hurt you." Despite this statement, the officer forcibly struck Plaintiff with his riot shield, knocking her to the ground.

36.     Plaintiff got up from the ground and tried to flee. As she ran from Lafayette Square, another law enforcement officer shoved her to the ground and violently struck her with a riot stick on her left leg, near her hip.

37.     Plaintiff struggled to get up and flee Lafayette Square.   Amidst the chaos, her camera was snatched from her and broken.

38.     As Plaintiff continued to try to flee Lafayette Square, law enforcement officers began load rubber bullets.   Two of the law enforcement officers aimed directly at Plaintiff, paralyzing her with fear.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

39.     While Plaintiff stood frozen with fear, law enforcement officers threw a chemical grenade at her that exploded between her legs, causing her severe second-degree burns.

40.     Eventually, Plaintiff managed to flee Lafayette Square.

41.     At 6:43 p.m., President Trump began delivering his remarks from the Rose Garden.

42.     At 6:50 p.m., President Trump concluded his remarks with the announcement that he was going to pay his respects to a "very, very special place."

43.     At 7:01 p.m., President Trump began walking from the White House to St. John's Church, through Lafayette Square.

44.     At 7:06 p.m., President Trump arrived at St. John's Church, and was handed a Bible, which he held up for photographs. He made a series of brief remarks, and continued to pose for photographs for five minutes.

45.     At 7:11 p.m., President Trump departed St. John's Church to return to the White House.

46.     The U.S. Department of Justice subsequently acknowledged that Attorney General Barr personally ordered that Lafayette Square be cleared of all demonstrators.

47.     President Trump's visit to St. John's Church was not motivated by any compelling government purpose—instead, it was an opportunity for photographs and press, driven entirely by President Trump's desires.

48.     As a direct result of Defendants' orchestrated and forceful attack on Plaintiff and other peaceful demonstrators, Plaintiff sustained numerous severe injuries, including second-degree burns and scarring therefrom, severe bruising on her both legs, skin irritation, and numerous bruises and contusions.   Plaintiff was treated at Patient First for her injuries.

49.     As a further direct result of Defendants' orchestrated and forceful attack on Plaintiff and other peaceful demonstrators, Plaintiff suffered severe fright and emotional distress. Plaintiff fears she will suffer serious injuries again at the hands of law enforcement.

50.     As a further direct result of Defendants' orchestrated forceful attack on Plaintiff and other peaceful demonstrators, Plaintiff has incurred, and will continue to incur, substantial medical expenses; and has suffered, and will continue to suffer, extreme physical and emotional pain, suffering, and anguish.

### **Defendants' Response to the June 1 Attack**

51.     On June 2, 2020, at 9:19 a.m., President Trump tweeted, "D.C. had no problems last night. Many arrests. Great job done by all. Overwhelming force. Domination. Likewise, Minneapolis was great (thank you President Trump!)."[13]

52.     On June 2, 2020, U.S. Park Police Chief Monahan issued a statement that law enforcement forcefully cleared Lafayette Square "[t]o curtail violence that was underway," claiming that by "approximately 6:33 p.m. [on June 1], violent protesters on

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

---

[13]   Tweeted from the President's personal account, @realDonaldTrump.

H Street NW began throwing projectiles including bricks, frozen water bottles, and caustic liquids."[14]  Demonstrators in Lafayette Square, including Plaintiff, who was in the crowd, did not witness the throwing of any projectiles—an account that has been consistently corroborated by video footage of the demonstration.

53.     On June 2, 2020, the U.S. Secret Service announced that all access to Lafayette Square would be blocked indefinitely to "ensure public safety," but identified no present or ongoing threat.  Federal law enforcement officers erected a perimeter along I Street that stretched from its intersection with 15th Street to its intersection with 17th Street, completely blocking public access to Lafayette Square and preventing the exercise of First Amendment rights therein.  By June 11, only some portions of the fence had been removed.

54.     On June 4, 2020, Attorney General Barr defended the clearing of Lafayette Square, claiming that the demonstrators had thrown projectiles, had become "increasingly unruly," and that they had been asked three times to move back one block.[15] Plaintiff, who was peacefully demonstrating in the crowd, did not see any projectiles thrown and did not hear any warnings or requests to move.  Attorney General Barr further denied any correlation between the clearing of Lafayette Square and

---

[14]    U.S. Park Police, *Statement from United States Park Police Acting Chief Gregory T. Monahan about the Actions Taken over the Weekend to Protect Life and Property*, June 2, 2020, https://www.nps.gov/subjects/uspp/6_2_20_statement_from_acting_chief_monahan.htm#:~:text=Throughout%20the%20demonstrations%2C%20the%20USPP.

[15]    Brian Naylor, *Attorney General Barr Defends Response to Protests Near the White House*, National Public Radio, Inc., June 4, 2020, https://www.npr.org/2020/06/04/869718579/watch-live-justice-department-holds-press-conference-amid-nationwide-protests.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

President Trump's walk to St. John's Church minutes later, though he acknowledged his knowledge of the President's plan.[16]  Yet within that same statement, Attorney General Barr said, "The president is the head of the executive branch and the chief executive of the nation and should be able to walk across the street to the church of presidents . . . I don't necessarily view that as a political act," suggesting that Lafayette Square was in fact cleared to afford President Trump a photo opportunity.[17]

55.     On June 8, White House Press Secretary Kayleigh McEnany said that there were "no regrets on the part of this White House" in the clearing of Lafayette Square a week prior.  Ms. McEnany further defended the use of chemical agents to clear the protestors from Lafayette Square.[18]

56.     On June 11, 2020, at 8:49 a.m., in an apparent reference to the clearing of Lafayette Square, President Trump tweeted, "Our great National Guard Troops who took care of the area around the White House could hardly believe how easy it was. 'A walk in the park', one said. The protestors, agitators, anarchists (ANTIFA), and others, were handled VERY easily by the Guard, D.C. police, and S.S. GREAT JOB!"[19]

---

[16]   *Id.*

[17]   *Id.*

[18]   The White House, *Press Briefing by Press Secretary Kayleigh McEnany*, June 8, 2020, https://www.whitehouse.gov/briefings-statements/press-briefing-press-secretary-kayleigh-mcenany-060820/.

[19]   Tweeted from the President's personal account, @realDonaldTrump.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

**The Nation Responds to the June 1 Attack**

57.     On June 2, 2020, Bishop of the Episcopal Diocese of Washington Mariann Edgar Budde, who oversees St. John's Church, condemned the forceful clearing of Lafayette Square with tear gas, and stated that she was given no notice of President Trump's plan to visit the Church.[20]

58.     On June 2, 2020, Former Under Secretary of Defense James N. Miller resigned from the Defense Science Board, citing Secretary of Defense Esper's support of the clearing of Lafayette Square as grounds for his resignation.  In a resignation letter addressed to Secretary of Defense Esper, Miller wrote, "When I joined the Board . . . I again swore an oath of office, one familiar to you, that includes the commitment to 'support and defend the Constitution of the United States . . . and to bear true faith and allegiance to the same' . . . You recited that same oath on July 23, 2019, when you were sworn in as Secretary of Defense. On Monday, June 1, 2020, I believe you violated that oath . . . You may not have been able to stop President Trump from directing this appalling use of force, but you could have chosen to oppose it. Instead, you visibly supported it."[21]

---

[20]     Jeanine Santucci, *'I am Outraged': DC Bishop Denounces Trump's Church Visit After Police Clear Protesters with Tear Gas*, USA Today, June 2, 2020, https://www.usatoday.com/story/news/politics/2020/06/01/mariann-edgar-budde-slams-trump-church-visit-after-george-floyd-protesters-tear-gassed/5313842002/.

[21]     Ryan Browne, *Official Resigns from Pentagon Advisory Board Over Esper's Perceived Support for Clearing Protest Outside of White House*, CNN, June 2, 2020, https://www.cnn.com/2020/06/02/politics/james-miller-resigns-defense-advisory-board/index.html.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

59.    On June 3, 2020, former Secretary of Defense James Mattis issued a statement condemning the forceful clearing of Lafayette Square, stating "When I joined the military, some 50 years ago, I swore an oath to support and defend the Constitution. Never did I dream that troops taking that same oath would be ordered under any circumstance to violate the Constitutional rights of their fellow citizens—much less to provide a bizarre photo op for the elected commander-in-chief, with military leadership standing alongside. We must reject any thinking of our cities as a 'battlespace' that our uniformed military is called upon to 'dominate' . . . ."[22]

60.    On June 10, 2020, more than 1,200 former Justice Department staffers signed a letter to Justice Inspector Michael Horowitz, expressing that they were "disturbed" by Attorney General Barr's order to clear Lafayette Square, and requesting that the Justice Department conduct an internal review into the order.   The former staffers wrote, "Based on what we know now, these actions [the forceful clearing of peaceful demonstrators in Lafayette Square] violated both the First Amendment of the United States Constitution, which protects freedom of speech and the press, and the right to assemble; and the Fourth Amendment, which prohibits unreasonable seizures, to include objectively unreasonable uses of force by law enforcement officers."[23]

---

[22]    CNN, *READ: Former Defense Secretary Mattis' Statement on Trump and Protests*, June 3, 2020, https://www.cnn.com/2020/06/03/politics/mattis-protests-statement/index.html.

[23]    Kevin Johnson, *More than 1,200 Former DOJ Officials Call for Review of AG Barr's Role in Clearing Protesters Near White House*, USA Today, June 10, 2020, https://www.usatoday.com/story/news/politics/2020/06/10/bill-barr-ex-doj-staffers-want-review-ag-role-clearing-protesters/5334704002/.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

<u>**COUNT I**</u>
**Violation of First Amendment**
**Rights to Speech, Assembly, and Petition: All Defendants**

61.     Plaintiff incorporates the foregoing paragraphs by reference and alleges that under the First Amendment to the U.S. Constitution, Plaintiff had a right to assemble, protest, and demonstrate peacefully in Lafayette Square, a public park.

62.     Because Lafayette Square is a public forum, government efforts to suppress speech and assembly therein can only limit the time, place, and manner of the exercise of the constitutionally protected rights to speech and assembly—in other words, the regulations must be subject matter and viewpoint-neutral.  Such efforts must be narrowly tailored to achieve an important government interest, and they must leave open alternative channels of communication.

63.     Defendants' violent clearing of Lafayette Square with chemical grenades, tear gas, pepper balls, and rubber bullets, without any warning to the peaceful protesters, was done for the singular purpose of affording President Trump a desired photo opportunity at St. John's Church; it was not narrowly tailored to serve any important government purpose.   Accordingly, Defendants' clearing of Lafayette Square was unconstitutional and violated Plaintiff's First Amendment rights.

64.     Furthermore, Defendants' violent suppression of the peaceful demonstration in Lafayette Square was motivated by the viewpoint expressed by Plaintiff and other protesters, who were protesting racism, police brutality, and the murders of George Floyd and Breonna Taylor. (As made clear by the fact that President

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

Trump affirmatively invited those who shared his personal views to gather and demonstrate at the same time in the same public forum. *See supra* ¶ 21(c).) But for Plaintiff's expression of this viewpoint, Defendants would not have violently suppressed the peaceful demonstration and violated his Constitutional rights.

65.     All content and viewpoint-based restrictions on speech in Lafayette Square are subject to "strict scrutiny"; they must be necessary to achieve a compelling government purpose, and must be narrowly tailored to achieve such purpose.

66.     Defendants' clearing of Lafayette Square through the violent suppression of the peaceful demonstration to afford President Trump a photo opportunity (a non-compelling government purpose), and their targeted attack on the viewpoint expressed by Plaintiff and other protesters, was unconstitutional and violated Plaintiff's First Amendment rights.

67.     As a direct result of Defendants' deliberate violation of Plaintiff's First Amendment rights through the violent suppression of the peaceful protest in Lafayette Square, Plaintiff suffered the injuries and damages set forth above.

68.     Defendants acted with reckless and/or callous indifference to Plaintiff's constitutional rights by violently suppressing his peaceful protest for no compelling government purpose; accordingly, Defendants are liable for punitive damages.

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

## COUNT II
### Violation of Fourth Amendment
### Right to Freedom from Unreasonable Seizure: All Defendants

69.     Plaintiff incorporates the foregoing paragraphs by reference and alleges that under the Fourth Amendment to the U.S. Constitution, Plaintiff has a right to be free from unreasonable seizures.

70.     Plaintiff, who was protesting peacefully before the curfew went into effect, did not commit a crime by demonstrating in Lafayette Square, and did not pose any threat to Defendants, their officers, and/or agents.

71.     Defendants' use of violence, force, and the threat of arrest against Plaintiff, without any warning, to clear her from Lafayette Square to afford President Trump a photo opportunity was objectively unreasonable and amounted to an unreasonable seizure that violated Plaintiff's Fourth Amendment rights.

72.     As a direct result of Defendants' deliberate violation of Plaintiff's First Amendment rights through the violent suppression of the peaceful protest in Lafayette Square, Plaintiff suffered the injuries and damages set forth above.

73.     Pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Defendants are jointly and severally liable to Plaintiff for the violation of her Fourth Amendment rights.

74.     Defendants acted with reckless and/or callous indifference to Plaintiff's constitutional rights through their unreasonable seizure of Plaintiff; accordingly, Defendants are liable for punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands injunctive relief so that Plaintiff may continue to exercise her constitutional rights to peacefully assemble and protest without fearing retribution, including preliminary injunctive relief and/or a temporary restraining order requiring Defendants to (1) restore access to Lafayette Square as a traditional public forum and (2) refrain from using excessive force on peaceful protesters;

WHEREFORE, Plaintiff demands a declaration that Defendants use of force to clear peaceful demonstrators from Lafayette Square through the use of chemical grenades, tear gas, and/or rubber bullets was and is unconstitutional and unlawful, and represents a violation of the First and Fourth Amendment;

WHEREFORE, Plaintiff demands compensatory damages from Defendants, jointly and severally, in an amount to be proven at trial, including damages for pain and suffering; and

WHEREFORE, Plaintiff demands punitive damages from Defendants, jointly and severally, in an amount to be proven at trial.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all of the above claims.

Respectfully submitted,

REGAN ZAMBRI LONG PLLC

By:   /s/ *Patrick M. Regan*
Patrick M. Regan          #336107
pregan@reganfirm.com

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030

- 24 -

Paul J. Cornoni          #489398
pcornoni@reganfirm.com
Christopher J. Regan      #1018148
cregan@reganfirm.com
Emily C. Lagan           #1645159
elagan@reganfirm.com
1919 M Street, NW, Suite 350
Washington, DC 20036
PH:  (202) 463-3030
FX:  (202) 463-0667
*Counsel for Plaintiff*

Regan Zambri Long
1919 M Street, NW
Suite 350
Washington, D.C. 20036

202-463-3030